UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ELDER CARE PROVIDERS OF INDIANA, INC., | ) ) ) |
| Plaintiff, | ) ) ) No. 1:14-cv-01894-SEB-MJD |
| vs. | ) ) |
| HOME INSTEAD, INC., | ) ) |
| Defendant. | ) |

## ORDER ON MOTION TO COMPEL

This matter is before the Court on Plaintiff's *Motion to Compel*. [Dkt. 233.] For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion.

**I.     Background**

This is an action for breach of a franchise agreement. Defendant Home Instead, Inc. ("Home Instead") operates a business that provides non-medical care to senior citizens through a network of independently-owned franchises. In 2006, Plaintiff Elder Care Providers of Indiana, Inc. ("Elder Care") entered into a franchise agreement to operate a Home Instead business in Indianapolis for a period of ten years ("Franchise Agreement"). Counter-Defendants Anthony and Georgette Smith (the "Smith Parties") were the franchise owners. In 2013, Home Instead learned Elder Care had formed Home Again Senior Care, Inc. ("Home Again"), a medical home health care corporation. Ultimately, Home Instead terminated Elder Care's Franchise Agreement on the basis that the operation of Home Again breached the Agreement's competitive restrictions and infringed on Home Instead's trademark. Elder Care filed this lawsuit, alleging the termination breached the Franchise Agreement and violated the Indiana Deceptive Franchise

1

Practices Act. Home Instead filed counterclaims alleging breach of contract, civil conspiracy, misappropriation of trade secrets, unfair competition, and trademark infringement.

This discovery dispute arises from Home Instead's privilege log, which identified a number of documents that Elder Care argues do not qualify for protection under attorney-client privilege or work product doctrine. Unable to resolve the issue informally or during a telephonic conference with the Court, Elder Care filed this Motion.

## II.     Legal Standard

Two protections are at issue with respect to the discovery requested of Home Instead: the attorney-client privilege and the work product doctrine.

### A. Attorney–Client Privilege[1]

The privilege of confidentiality afforded to communications between attorney and client is one of the oldest common law privileges, and is meant to encourage full and frank discussions that promote observance of the law and the administration of justice. *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981). The Seventh Circuit finds that in order for the common law attorney-client privilege to cover a communication, the court must determine (1) whether legal advice was sought from an attorney in his or her capacity as an attorney and (2) whether the communication was related to that purpose and made in confidence by the client. *Sandra T.E. v. S. Berwyn Sch. Dist. 100,* 600 F.3d 612, 618 (7th Cir. 2009) (citing *United States v. Evans,* 113

---

[1] After citing Seventh Circuit law in its correspondence with the Court on this discovery dispute, Home Instead makes a belated attempt to argue Nebraska law should apply pursuant to the choice of law clause in the Franchise Agreement. The Court applies Seventh Circuit law in this Order, but notes that the law relating to attorney-client privilege in Nebraska is not so appreciably different that it would dictate a different result. *See U.S. Commodity Futures Trading Commission v. Arrington*, 2013 WL 353060 at *2 (finding that emails between an attorney and clients reflected conversations related to business matters and not legal services therefore did not come within the scope of attorney-client privilege.); *see also United States v. Spencer,* 700 F.3d 317, 320 (8th Cir. 2012) ("The attorney-client privilege protects confidential communications between a client and his attorney made for the purpose of facilitating the rendering of legal services to the client. But when an attorney acts in other capacities, such as a conduit for a client's funds, as a scrivener, or as a business advisor, the privilege does not apply.")

F.3d 1457, 1461 (7th Cir. 1997)). The party seeking protection from the privilege has the burden to establish all of the essential elements. *United States v. White,* 950 F.2d 426, 430 (7th Cir.1991) (citing *United States v. Lawless,* 709 F.2d 485, 487 (7th Cir.1983)). The Supreme Court has noted that there is a stark difference between communications to attorneys and the underlying facts of the case; communications are privileged, but a client cannot conceal a *fact* merely by revealing it to his or her lawyer. See *Upjohn* 449 U.S. at 395–96. In addition, the privilege is limited to situations in which the attorney is acting as a legal advisor—business and financial advice are not protected. *Burden–Meeks v. Welch,* 319 F.3d 897, 899 (7th Cir.2003). "Where a document is prepared for simultaneous review by legal and non-legal personnel and legal and business advice is requested, it is not primarily legal in nature and is therefore not privileged." *Baxter Travenol Labs., Inc. v. Abbott Labs.,* No. 84 C 5103, 1987 WL 12919, at *5 (N.D. Ill. June 19, 1987).

### B. <u>Work Product Doctrine</u>

The work product doctrine is different than the attorney-client privilege and protects from discovery "documents and tangible things that are prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3)(A); *United States v. Nobles,* 422 U.S. 225, 238 (1975). The work product doctrine shields "material prepared by agents for the attorney as well as those prepared by the attorney himself." *Nobles*, 422 U.S. at 238–39. This protection does not apply if the prospect of future litigation was remote at the time the document was created. *Binks Mfg. Co. v. Nat'l Presto Indus., Inc*., 709 F.2d 1109, 1118 (7th Cir.1983). "The mere fact that litigation does eventually ensue does not, by itself, cloak materials prepared by an attorney ... the privilege is not that broad." *Id*. Instead, the work product doctrine applies only when there was "an identifiable prospect of litigation because of specific claims that have arisen." *Baxter Travenol Labs*., 1987 WL 12919, at *10. To identify work product, courts are directed to determine "whether in light

3

of the factual context the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Logan v. Commercial Union Ins. Co*., 96 F.3d 971, 976–77 (7th Cir. 1996) (quoting *Binks*, 709 F.2d at 1119) (internal quotation marks omitted).

### III.     Discussion

Elder Care disputes Home Instead's assertion of attorney-client privilege with regard to multiple documents appearing on Home Instead's privilege log. Complicating the confidentiality designation process is the fact that Home Instead employs two attorneys in dual legal and management roles. Jisella Dolan is an attorney who serves as Home Instead's Chief Advocacy Officer and oversees the standards review team. Tanya Morrison is General Counsel for Home Instead and directed the internal investigation of Elder Care that resulted in the termination of the Franchise Agreement.

The "expanded role of legal counsel within corporations" has blurred the line between business and legal advice. *Acosta v. Target Corp.,* 281 F.R.D. 314, 322 (N.D. Ill. 2012). A prudent corporation will seek legal advice with respect to most business decisions, but the inclusion of general counsel does not transform all business discussions into privileged attorney-client communications. *Upjohn,* 449 U.S. at 393. So called "dual-purpose" documents (documents with both a business and legal purpose) may be prepared by or for attorneys, but they are not privileged if they are not "primarily legal" in nature. *Baxter*, 1987 WL 12919 at *5.

Elder Care asserts that Home Instead used Dolan and Morrison's status as attorneys to cloak otherwise non-privileged dual-purpose documents in attorney-client privilege. Home Instead maintains the documents at issue had a primarily legal purpose and, therefore, are entitled to attorney-client privilege protection. The Court conducted an *in camera* document-by-document review to determine the status of each document, as grouped in Elder Care's Motion.

The Court reiterates that the attorney-client privilege is narrowly applied, and Home Instead bears the burden of proving that the privilege applies. *Evans,* 113 F.3d at 1461.

### *(a) March 11, 2013*

The email strings at issue here originate with a March 11, 2013, email from Mike Bunnell, the owner of the Home Instead franchise located in Greenwood, Indiana, to Susan Richardson, Home Instead's Business Performance Manager. Bunnell voices concerns about whether the operation of Home Again is proper in light of the Franchise Agreement. Richardson forwarded the email to Jisella Dolan who replied that the matter is under investigation. [HI004690-HI004692.] These emails are subsequently forwarded multiple times to employees within the Business Performance and Standards teams.

Home Instead redacts these emails out of each of the relevant strings on the basis that the investigation into the Smith Parties' conduct operating Home Again "was not part of its ordinary business practices, but instead served a legal purpose." [Dkt. 239 at 7.]  Elder Care notes that in the initial privilege log, the subject matter field indicated the email exchange was shared with "Legal/Standards." Yet a revised privilege log deleted reference to "Standards" and Home Instead emphasizes Dolan was operating solely in her legal role in these communications. [Dkt. 234 at 6.]

These emails occurred at an early stage of Home Instead's investigation into the Smith Parties' conduct and nearly two years before it filed this lawsuit. Moreover, the emails do not seek, or render, legal advice. The emails discuss the alleged actions of a franchisee and the fact that the matter is under investigation. The principal consideration for the Court is the nature of the document – "whether it primarily requests or gives legal or business advice." *Baxter*, 1987 WL 12919 at *5.  The Court finds these emails have a primarily business purpose and are not

privileged. Home Instead shall produce the emails at HI004690-HI004692 within each of the relevant strings.

### (b) April 9, 2013

Similarly, the email string at issue here begins with an initial inquiry from Richardson to Dolan about the status of the investigation. Dolan forwards the inquiry to Morrison (General Counsel) who responds with a brief update. [HI007988-HI007990.] As with the emails above, these emails concern an investigation into a business issue not a purely legal issue and should be produced.

### (c) and (d) August 13, 2013

The two emails for which Home Instead seeks protection here begin with another inquiry from Richardson to Morrison regarding the investigation. Morrison provides a brief response indicating Home Again would be audited that day to gather more information about the business. [HI005616.] As with the emails above, these emails concern an investigation into a business issue not a purely legal issue and should be produced.

### (e) August 20 & 21, 2013

This email string begins with an inquiry from Bunnell (the Greenwood Home Instead franchise owner) to Richardson and Linda Young (both Business Performance Managers) that Home Instead has already released to Elder Care. Home Instead seeks to protect the subsequent emails in this string – Richardson's forward to Morrison, Jennifer Rozgay (Director of Standards) and Young and Morrison's response to the same group. [HI007417-HI007418.] Morrison's response indicates the investigation is ongoing and to thank Bunnell for his concern. Again, these emails do not seek or render legal advice; they have a primarily business purpose and therefore are not privileged.

### *(f) October 9, 2013*

The email string Home Instead seeks to protect here begins with an email from Nadine Klinkacek (an administrative assistant presumably in the legal department) to Richardson, Young and Brandy Zambrano (the Business Performance team). [HI7558-HI007561.] Klinkacek relays a directive from "Legal" relating to communications with the Smith Parties, who at that time had engaged legal counsel. The subsequent emails in the string are requests for clarification from Dolan and Dolan's responses. In contrast to the emails discussed above, this string includes both the request for and provision of legal advice concerning communications with the Smith Parties. Consequently, the Court finds these emails are protected by attorney-client privilege.

### *(g) and (h) November 13, 2013*

These two email strings begin with Anthony Smith inquiring separately with Richardson [HI006329][2] and with Jerry Cook (Franchise Standards Advisor) [HI007203-HI007208] as to the status of the investigation. Cook forwarded Smith's inquiry to Morrison; Richardson forwarded the one she received to Dolan. Home Instead asserts those forwarding emails and responses from the two attorneys are protected by attorney-client privilege. The substance of those emails, however, does not constitute seeking or providing legal advice. Rather, Smith's emails were simply forwarded to Morrison/Dolan and Morrison responded that she would communicate with Smith directly. A document does not become privileged simply because a copy is sent to an attorney. *See Acosta*, 281 F.R.D. at 321. These emails are not privileged and should be produced.

### *(i) November 18, 2013*

This is another email from Anthony Smith inquiring with Rozgay as to the status of the investigation. [HI007566-HI007568.] Rozgay forwards it to Morrison with a note asking how to

---

[2] Elder Care's Motion references HI-006630 as part of this chain, but that document was not provided to the Court as part of the *in camera* review.

respond. There is no response email from Morrison. Home Instead seeks to protect only the single line from Rozgay. This email seeks a status update, not legal advice, therefore is not privileged and should be produced.

### *(j) November 20, 2013*

In this email string, Anthony Smith reaches out to Jerry Cook (Franchise Standards Advisor), Rozgay (Director of Standards) and Morrison to provide links to the state regulations for home health companies. Rozgay then emails her evaluation of the regulations to Morrison and Cook. [HI007137-HI007139.] Home Instead seeks to protect Rozgay's email to Morrison and Cook. There is no indication from the email or Home Instead's response brief that Morrison asked Rozgay to evaluate the regulations noted by Smith. As it is Home Instead's burden to establish the privilege, the Court cannot find attorney-client privilege here. This email should be produced.

### *(k) January 16-20, 2014*

This email string is initiated by Richardson's request to Morrison, Rozgay and Dolan for a status update on the Smith matter. Dolan responds that the investigation is ongoing, and that Home Instead "has not put any constraints on him at the (sic) point with regards to his Home Again business so he can continue to run his business as he has." [HI007873-HI007876.] These two emails have already been produced to Elder Care. At issue are subsequent emails in the chain from Morrison and Young. Elder Care refers to this email string as a "smoking gun" in this litigation and argues the subsequent emails are not privileged. Home Instead does not address these emails specifically in its response to Elder Care's Motion. The Court's review of the emails finds no legal advice was either sought or dispensed, the context being more akin to that of the "status updates" discussed above. Consequently, the Court finds Home Instead has not

demonstrated that the attorney-client privilege shields the subsequent emails in this string from discovery. Home Instead shall produce HI007873-HI007874.

### (l) February 17, 2014

The emails sought here include the initial email from Morrison to Richardson, Young, Rozgay and Dolan and each of their responses. The initial email subject line is "Anthony Smith Update," however the information relayed in the email is more substantive than the "status update" emails addressed previously. [HI007565] This is an email from Home Instead's General Counsel advising the management employees who work mostly closely with Defendant Smith (who by this time also was represented by counsel) of the status of the dispute and the legal position of Home Instead. This email, along with the related responses, are protected by attorney-client privilege.

### (m) March 4, 2014

This email string was initiated by Mike Bunnell (the Greenwood Home Instead franchisee) to Young concerning proposed business with Defendant Smith in an attempt to discern whether Home Instead approves of the proposal. Bunnell's email and response from Young have been produced to Elder Care. Young forwarded the email to Morrison, who in turn responded to Young. Home Instead seeks to protect these two emails as privileged. [HI005637-HI005638.] Upon review, the Court finds Young's email to Morrison and Morrison's response constitute seeking and providing legal advice. Therefore, these emails are protected by attorney-client privilege.

### (n) March 10, 2014

This email string is a follow-up to the March 4, 2014, string discussed above. [HI007661-HI007662.] Home Instead's privilege log indicates these emails constitute "Legal's determination of whether the Smith's conduct is in violation of the franchise agreement." As the

emails entail Young seeking legal advice from Morrison, they are protected by attorney-client privilege.

### *(o) November 7, 2014*

The "core" of these emails is an email from Morrison to Defendants' counsel Josh Brown concerning potential settlement of the dispute. Morrison forward this email to Jeff Huber (President/CEO), Dave Banark (COO), Dolan, Richardson, John Hogan (CDO), Young, Rozgay, Kathleen McKay (Director of Standards) and Jenna Berg (outside counsel). Morrison's forward includes a message concerning the settlement offer. [HI007429-HI007431.] The remaining documents referenced in this category of Elder Care's Motion are various responses generated from the above group. Home Instead seeks to protect Morrison's forwarding email and the various responses.

The Court agrees the email from Morrison and resulting responses qualify for attorney-client privilege protection. While Elder Care asserts the emails primarily "provide a business update," the Court's review indicates otherwise. Elder Care also questions the withholding of a related email from Richardson to Goetz (Director of Business Performance) because they are both non-attorneys. However, there is no content to that email. Richardson simply forwarded Morrison's privileged email to Goetz. Given Goetz's position, Richardson did not destroy the privilege by forwarding the email to him.

### *(p) January 21, 2015*

This is an email from Young to Morrison seeking guidance on how to address a franchisee's questions about this litigation. [HI007279-HI007280.] Elder Care asserts that based upon the subject noted in the privilege log ("Request for advice on what information to share with a neighboring Indianapolis franchisee"), it appears Young was seeking public relations

advice as opposed to legal advice. Upon review of the emails, the Court finds otherwise. These emails are protected by attorney-client privilege.

### *(q) January 25, 2015*

The bulk of this email string has been produced. It includes an announcement from Morrison to all franchisees regarding this litigation and an inquiry from one of the franchisees. Richardson forwards the inquiry to Morrison and this is the email for which Home Instead seeks protection. [HI7841-HI007843.]

As with the above email, Elder Care asserts that it appears from the privilege log to constitute public relations advice rather than legal advice. Again, upon review of the emails, the Court finds otherwise. These emails are protected by attorney-client privilege.

### *(r) and (s) January 31, 2015*

These emails also stem from Morrison's announcement to franchisees. In one string, Richardson and Morrison discuss details of the settlement offer presented to Defendants. [HI-007991-HI008001.] Home Instead seeks to protect the first four emails on this string. The first three of the four involve employees seeking, and Morrison providing, legal opinions. These emails are protected by attorney-client privilege. The fourth email in this string (from Richardson to Morrison dated January 31, 2015 at 3:07 p.m.) is simply a comment regarding Morrison's announcement to the franchisees. As this is a business, not a legal, communication, it is not protected by attorney-client privilege and shall be produced.

In the second string, Mark Goetz (Director of Business Performance) comments on Morrison's email to franchisees. [HI-005640-HI-005642.] This email is a business, not a legal, communication, and also should be produced.

### *(t) and (u) Undated Handwritten Notes*

The final documents at issue are two handwritten notes. Home Instead asserts the first note, drafted by Dolan, is entitled to attorney-client and work product privilege. [HI-014023.] The Court agrees this document reflects "litigation strategy" and is protected by the work product doctrine. The second handwritten note is from Rozgay to Morrison concerning a franchisee. [HI-014032.] Although Home Instead asserts Rozgay was communicating information to Morrison to assist with a legal decision, the note falls short of a privileged communication. Home Instead shall produce HI-014032 to Elder Care.

Both parties seek attorneys' fees for their effort to either file or respond to this Motion. Rule 37(a)(5)(C) instructs that if a motion to compel discovery is granted in part and denied in part, the Court may award reasonable attorneys' fees. When "the dispute over discovery between the parties is genuine, ... the losing party is substantially justified in carrying the matter to the court" and the award of expenses is not indicated. Fed. R. Civ. P. 37(a) (1970 Committee Notes). The Court finds this to be the case here and declines to award attorneys' fees.

### IV. Conclusion

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's *Motion to Compel*. [Dkt. 233.] Home Instead shall produce unredacted copies of the documents set forth above on or before **March 10, 2016**.

Dated: 08 MAR 2016

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Andrew M. McNeil
BOSE MCKINNEY & EVANS, LLP
amcneil@boselaw.com

Craig Eldon Pinkus
BOSE MCKINNEY & EVANS, LLP
cpinkus@boselaw.com

Gregory W. Guevara
BOSE MCKINNEY & EVANS, LLP
gguevara@boselaw.com

Philip R. Zimmerly
BOSE MCKINNEY & EVANS, LLP
pzimmerly@boselaw.com

Ronald E. Elberger
BOSE MCKINNEY & EVANS, LLP
relberger@boselaw.com

Adam W. Barney
CLINE WILLIAMS WRIGHT JOHNSON & OLDFATHER, LLP
abarney@clinewilliams.com

Theresa D. Koller
CLINE WILLIAMS WRIGHT JOHNSON & OLDFATHER, LLP
tkoller@clinewilliams.com

Trenten P. Bausch
CLINE WILLIAMS WRIGHT JOHNSON & OLDFATHER, LLP
tbausch@clinewilliams.com

Adam Arceneaux
ICE MILLER LLP
adam.arceneaux@icemiller.com

Mark R. Alson
ICE MILLER LLP
mark.alson@icemiller.com

Olga A. Voinarevich
ICE MILLER LLP
olga.voinarevich@icemiller.com

Bernie W. (Too) Keller
KELLER MACALUSO LLC
too@kellermacaluso.com

Josh F. Brown
LAW OFFICES OF JOSH F. BROWN, LLC
josh@indyfranchiselaw.com